IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

J BRANDS LLC,
a Florida limited liability company

     Plaintiff

v.

LGNDS LLC, a Wyoming limited
liability company, MICHAEL TYSON, an
individual, and TYSON 2.0 INC. f/k/a
CARMA HOLDCO, INC., a Delaware
corporation

     Defendants

Case No. 1:26-cv-6329

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, J Brands LLC ("J Brands"), by and through its undersigned counsel, hereby sues Defendants, LGNDS LLC ("LGNDS"), Michael Tyson ("Mr. Tyson"), and Tyson 2.0 Inc. f/k/a CARMA Holdco, Inc. ("Carma"), and alleges as follows:

### Nature of the Action

1.     This is an action for declaratory relief pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, seeking a declaration that J Brands's use of the TYSON 2.0 trademark and the Tyson Tattoo trademark does not infringe, dilute, or otherwise violate any rights claimed by Defendants, and that J Brands's use of such marks was authorized pursuant to a license agreement with LGNDS and/or through an implied license arising from the parties' course of conduct.

2.     This action also seeks damages for breach of the Trademark License Agreement (the "License Agreement") entered into between J Brands and LGNDS. A true and correct copy of the License Agreement is attached as **Exhibit A**.

**Parties**

3. Plaintiff J Brands is a limited liability company organized under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida.

4. Defendant LGNDS is a limited liability company organized under the laws of the State of Wyoming with its principal place of business in New York, New York.

5. Defendant Mr. Tyson is an individual who is the current Chief Executive Officer of Carma and a citizen of Florida.

6. Defendant Carma is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in Cook County, Illinois and in Clark County, Nevada.

**Jurisdiction and Venue**

7. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Lanham Act.

8. This Court also has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

9. This Court may grant the declaratory relief requested herein pursuant to 28 U.S.C. §§ 2201–2202.

10. This Court has personal jurisdiction over Defendant LGNDS because LGNDS expressly consented to jurisdiction in this district pursuant to the forum-selection clause contained in Section 16.9 of the License Agreement. This Court also has personal jurisdiction over the remaining Defendants because they have purposefully availed themselves of the privilege of conducting business in Illinois, Plaintiff's claims arise out of or relate to Defendants' contacts with

Illinois, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants consented to venue in Cook County, Illinois under the License Agreement and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## Conditions Precedent

12. All conditions precedent to bringing this action have occurred, been satisfied, or waived.

## Facts

### The License Agreement Between J Brands and LGNDS

13. J Brands is engaged in the business of developing, manufacturing, marketing, and selling CBD, hemp, vaping, nicotine, smoking, and related products.

14. LGNDS is a brand licensing company focused on hemp-related consumer products.

15. LGNDS holds a license from Carma granting it certain rights in and to the TYSON 2.0 brand, including the right to sublicense the TYSON 2.0 trademark, identified by U.S. Trademark Registration Nos. 7341084 and 8152313 (collectively, the "TYSON 2.0 Mark").

16. In 2022, J Brands and LGNDS entered into the License Agreement whereby LGNDS granted J Brands a sublicense to use the Tyson 2.0 Mark in connection with the development, manufacture, and sale of vapes and related products as mutually agreed upon by the parties from time to time. *See* License Agreement § 1.3.

17. Pursuant to the License Agreement, J Brands originally agreed to pay LGNDS a 34% royalty on profits derived from the sale of the licensed products. *See* License Agreement, § 6.1.

18. The term "profit" was specifically defined as the resulting value when calculating the gross sales price of the licensed products minus the gross costs incurred by Plaintiff in the manufacturing and selling of the licensed products. *See* License Agreement § 6.1.

19. The royalty rate was later modified by way of an Amendment Agreement, which is attached hereto as **Exhibit B**. Pursuant to that amendment, J Brands agreed to pay LGNDS a 39% royalty on profits derived from domestic sales of the licensed products and a 50% royalty on the sale of products outside of the United States. *See* Amendment Agreement at § 5 (modifying §§ 6.1(a) and 6.1(b)).

20. Throughout the relationship and at all relevant times, J Brands manufactured, marketed, and sold licensed products in reliance on the rights granted under the License Agreement and with the full knowledge and participation of LGNDS.

21. J Brands has at all times complied with its obligations under the Trademark License Agreement, as amended, including the payment of all royalties to LGNDS.

**Royalty Accounting and Course of Conduct**

22. On or about August 2025, J Brands performed an internal audit of its financial accounts and determined that there had been both overpayments and underpayments of royalties to LGNDS.

23. Specifically, J Brands determined that certain costs associated with manufacturing and selling the licensed products had not been properly accounted for in calculating "profit," resulting in overpayments, including more than $400,000 in 2023 alone. *See* License Agreement § 6.1.

24. J Brands also discovered that it had underpaid royalty payments to LGNDS in 2024.

25. To date, an investigation and a full accounting of all costs borne by J Brands in relation to the sale and manufacturing of the licensed products remains ongoing.

-4-

26. Upon discovering these discrepancies, J Brands notified LGNDS of its audit findings and provided all pertinent documents and Excel spreadsheets explaining the relevant business expenses incurred in the manufacture and sale of the licensed products that had not been properly deducted from the royalty calculations, the amount of any royalty underpayments, and provided a detailed summary and breakdown of all calculations up to that point.

27. Thereafter, the parties had numerous discussions on the subject and exchanged pertinent documentation substantiating the amounts of the overpayments and underpayments.

28. Following these discussions, LGNDS agreed that J Brands could offset the net amount of royalty overpayments (after accounting for any underpayments) against future royalty obligations.

29. LGNDS further agreed that certain outstanding invoices owed to J Brands could also be set off against future royalty payments.

30. From approximately August 2025 through March 2026, J Brands applied these agreed-upon offsets against the monthly royalty payments due to LGNDS. Each month, J Brands provided LGNDS a breakdown of the royalty payments, including the amounts offset for royalty overpayments, and the amounts deducted for past-due invoices.

31. During this period, LGNDS accepted the offsets without protest.

32. To date, LGNDS remains indebted to J Brands in an amount believed to exceed $500,000.00, subject to adjustment upon completion of J Brands' ongoing investigation and accounting of all cost deductions attributable to the manufacture and sale of the licensed products during the term of the License Agreement.

33. Additionally, LGNDS remains indebted to J Brands for unpaid invoices in the amount of $37,490.00.

**The May 5, 2026 Demand and Threatened Federal Litigation**

34.     On May 5, 2026, after many months of accepting and operating under the mutually agreed upon arrangement regarding offsets, Defendants—including LGNDS—sent a demand letter to J Brands falsely asserting that J Brands had engaged in widespread misconduct.

35.     The demand letter accused J Brands of, among other things:

(a)  breaching the License Agreement
(b)  fraud;
(c)  trademark infringement and dilution under the Lanham Act; and
(d)  unauthorized use of the TYSON 2.0 and Tyson Tattoo trademarks.

36.     The demand letter further asserted that J Brands:

(a)  made "unauthorized" deductions from royalty calculations;
(b)  owed millions of dollars in allegedly unpaid royalties;
(c)  exceeded the scope of its license; and
(d)  used the TYSON 2.0 trademark and the Tyson Tattoo trademark in a manner not approved by Defendants.

37.     Defendants claimed that J Brands's conduct caused tens of millions of dollars in damages and demanded—without any basis in fact—a lump sum payment of $20 million.

38.     The demand letter also expressly threatened imminent federal litigation in the Northern District of Illinois and the pursuit of "emergency" injunctive relief, including a temporary restraining order to halt J Brands's business operations involving TYSON 2.0 products.

39.     Defendants further asserted that J Brands' conduct constituted violations of the Lanham Act, including trademark infringement, false designation of origin, and dilution.

**Breaches by LGNDS**

40.     LGNDS has breached the License Agreement by: (1) refusing to allow for the overpayments to be properly deducted from the royalty payments despite originally agreeing to such deductions; and (2) by failing to return the overpaid royalty payments after receiving documentation substantiating those overpayments.

41. The License Agreement clearly delineates the rights and responsibilities of each party and allows for J Brands to deduct the costs associated with the sale and the manufacturing of the licensed products from the gross sales price of that product before arriving at the profit from which the royalty payments stem.

42. LGNDS refuses to honor the License Agreement and the terms and conditions expressed therein.

43. Moreover, LGNDS is currently indebted to J Brands for unpaid invoices stemming from the sale of products to it.

44. As a result, J Brands has been damaged and continues to be damaged.

45. J Brands has retained the undersigned law firms to represent it in this matter and has agreed to pay the firms their reasonable fees for such representation.

**Count I**
**Declaratory Judgment**
**(J Brands Against Defendants)**

46. J Brands incorporates by reference herein the allegations of Paragraphs 1 through 45 above.

47. An actual, present, and justiciable controversy exists between J Brands and Defendants regarding J Brands' use of the TYSON 2.0 trademark and the Tyson Tattoo trademark.

48. Defendants have expressly accused J Brands of trademark infringement, unfair competition, false designation of origin, and dilution under federal law, and have threatened imminent litigation seeking monetary damages and injunctive relief.

49. Defendants contend that J Brands's use of the TYSON 2.0 mark and related intellectual property was unauthorized and exceeded the scope of the License Agreement.

50. J Brands denies those contentions in their entirety.

51. J Brands contends that its use of the TYSON 2.0 mark was expressly authorized pursuant to the License Agreement entered into with LGNDS.

52. J Brands further contends that, to the extent any aspect of its use is alleged to fall outside the express terms of the License Agreement, such use was authorized pursuant to an implied license arising from the parties' course of dealing, course of performance, and course of conduct throughout the business relationship.

53. Similarly, J Brands had an implied license arising from the parties' course of conduct as to the use of the Tyson Tattoo on product packaging.

54. At all relevant times, Defendants, including LGNDS and those acting in concert with it, had knowledge of J Brands' use of the TYSON 2.0 and Tyson Tattoo marks in connection with the manufacture, marketing, distribution, and sale of products.

55. With that knowledge, Defendants permitted, encouraged, and acquiesced in J Brands's use of the marks, including by accepting the benefits of such use, approving or failing to object to such activities, and continuing to accept royalty payments and other commercial advantages derived from J Brands' conduct.

56. Defendants' course of conduct, including their knowledge, acceptance, and failure to timely object, created a reasonable belief that J Brands's use of the marks was authorized.

57. J Brands relied on Defendants' conduct and representations in continuing to develop, manufacture, market, and sell products bearing the TYSON 2.0 and Tyson Tattoo marks.

58. By virtue of the foregoing, Defendants are barred, in whole or in part, by the doctrines of acquiescence, waiver, and equitable estoppel from asserting that J Brands's use of the marks was unauthorized or infringing.

59. Defendants' prior course of performance further confirms that J Brands' use of the TYSON 2.0 and Tyson Tattoo marks was consistent with, and authorized under, the License Agreement as understood and implemented by the parties.

60. Accordingly, J Brands' use of the TYSON 2.0 and Tyson Tattoo marks was and remains authorized and lawful.

61. J Brands' conduct does not constitute trademark infringement, dilution, false designation of origin, unfair competition, or any violation of the Lanham Act.

62. Defendants' assertions to the contrary have created uncertainty regarding J Brands's rights and have exposed J Brands to ongoing threats of litigation, business disruption, and reputational harm.

63. A judicial declaration is necessary and appropriate at this time to resolve the parties' dispute and clarify their respective rights and obligations.

WHEREFORE, J Brands respectfully requests that this Court enter judgment in its favor and against Defendants, declaring that:

(a) J Brands has not infringed, diluted, or otherwise violated any rights in the TYSON 2.0 trademark, the Tyson Tattoo trademark, or any related intellectual property;

(b) J Brands' use of the TYSON 2.0 mark and related materials was authorized pursuant to the License Agreement and/or pursuant to an implied license arising from the parties' course of conduct; and

(c) Defendants are barred, in whole or in part, by the doctrines of acquiescence, waiver, and equitable estoppel from asserting claims based on allegedly unauthorized use of the marks.

**Count II**
**Breach of Contract – Trademark License Agreement**
**(J Brands Against LGNDS)**

64. J Brands incorporates by reference herein the allegations of Paragraphs 1 through 45 above.

65. The License Agreement, as amended, is a valid, binding, and enforceable contract between J Brands and LGNDS.

66. Under the License Agreement, LGNDS granted J Brands the right to use the TYSON 2.0 Mark in connection with licensed products in exchange for the payment of royalties calculated based on "profit" as defined in the License Agreement. *See* License Agreement § 6.1.

67. The License Agreement defines "profit" as the gross sales price of the licensed products minus the costs incurred in the manufacturing and sale of those products.

68. J Brands performed its obligations under the License Agreement, including paying royalties and providing LGNDS with regular accountings concerning sales, costs, and royalty calculations.

69. In or about August 2025, J Brands conducted an internal audit and determined that certain costs had not been properly deducted in calculating royalties, resulting in overpayments to LGNDS.

70. J Brands notified LGNDS of those findings and provided detailed documentation supporting the existence and amount of the overpayments.

71. Following discussions between the parties, LGNDS agreed that J Brands could offset the net amount of any royalty overpayments against future royalty obligations.

72. LGNDS further agreed that certain outstanding invoices owed to J Brands could also be offset against future royalty payments.

73. LGNDS accepted those offsets for a period of months without objection.

74. LGNDS has since repudiated its agreement and the parties' established course of performance, including its prior acceptance of offsets, by refusing to permit continued application of such offsets and by demanding repayment of amounts previously offset.

75. LGNDS has further failed and refused to return royalty overpayments made by J Brands or to pay outstanding invoices owed to J Brands.

76. To date, LGNDS remains indebted to J Brands in an amount believed to exceed $500,000.00, subject to adjustment upon completion of J Brands' ongoing investigation and accounting of all cost deductions attributable to the manufacture and sale of the licensed products during the term of the License Agreement.

77. LGNDS's conduct constitutes a material breach of the License Agreement, including but not limited to its failure to honor agreed-upon royalty calculations and offsets, and its refusal to repay amounts not properly owed under the License Agreement.

78. As a direct and proximate result of LGNDS's breach of the Agreement, J Brands has suffered monetary damages in the form of overpaid royalties and unpaid invoices, in an amount to be determined at trial.

79. Pursuant to the Agreement, J Brands is entitled to recover its reasonable attorneys' fees and costs incurred in enforcing its rights under the License Agreement. *See* License Agreement § 16.9.

WHEREFORE, Plaintiff J Brands LLC, hereby demands judgment against Defendant LGNDS LLC for compensatory damages, pre-judgment interest on any liquidated sums, post-judgment interest, costs incurred in connection with this action, reasonable attorney's fees pursuant

to Section 16.9 of the License Agreement, and for such other and further relief as the Court deems just and proper.

## Count III
## Unjust Enrichment
**(J Brands Against LGNDS)**

80.     In the alternative to Count II for Breach of Contract, J Brands incorporates by reference herein the allegations of Paragraphs 1 through 45 above.

81.     This claim is pled in the alternative in the event that the License Agreement is deemed invalid, unenforceable, or otherwise inapplicable to the parties' dispute.

82.     J Brands and LGNDS entered into a business relationship.

83.     During the course of this business relationship, J Brands conferred a direct and substantial benefit upon LGNDS, including by making royalty payments that exceeded the amounts properly owed.

84.     LGNDS knowingly received and accepted those overpayments.

85.     LGNDS refuses to return these overpayments of royalties to J Brands despite being provided with documentation demonstrating that such funds were not properly owed.

86.     Under the circumstances, it would be inequitable and unjust for LGNDS to retain those benefits.

87.     To the extent LGNDS received such overpayment and enjoyed the benefit and use of the overpayment made by J Brands, then LGNDS has been unjustly enriched.

WHEREFORE, Plaintiff J Brands LLC hereby demands judgment against Defendant LGNDS LLC for compensatory damages, pre-judgment interest on any liquidated sums, post-judgment interest, costs incurred in connection with this action, and for such other and further relief as the Court deems just and proper.

-12-

**Jury Demand**

Plaintiff hereby demands trial by jury in this action of all issues so triable pursuant to Federal Rules of Civil Procedure 38 and 39.

Respectfully submitted,

**LEWIS THOMASON, P.C.**

*s/ Isaac S. Lew*
Isaac S. Lew (ARDC #6343527)
ilew@lewisthomason.com
1043 S. Roselle Rd., Unit #2100
Schaumburg, IL 60193
Telephone: (901) 577-6151

and

**MARCUS LAW CENTER, LLC**

Alan K. Marcus (*pro hac vice forthcoming*)
amarcus@marcuslawcenter.com
Alexandra D. Salvador (*pro hac vice forthcoming*)
asalvador@marcuslawcenter.com
2600 Douglas Rd., Suite 1111
Coral Gables, FL 33134
Telephone: (305) 507-1203

*Counsel for Plaintiff*

-13-